# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRENDA LEE VESELY,  :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.  :

Case No. 3:08-cv-258

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 22, 2004, alleging disability from June 11, 2004, due to multiple sclerosis (MS), vertigo, tunnel vision, constant low back pain, and heat intolerance. (Tr. 50-52; 61). Plaintiff's application was denied initially and on reconsideration. (Tr. 32-34; 36-38). A hearing was held before Administrative Law Judge Thaddeus Armstead, (Tr. 287-326), who determined that Plaintiff is not disabled. (Tr. 10-24). the Appeals Council denied Plaintiff's request for review, (Trp 5-7), and Judge Armstead's opinion became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that she has severe MS, relapsing and remitting type, and major depression, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 17, ¶¶ 3, 4). Judge Armstead found further that Plaintiff has the residual functional capacity to perform a limited

3

range of sedentary work. (Tr. 19, ¶ 5). Judge Armstead then used section 201.28 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 23, ¶¶ 9, 10). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 24).

In her Statement of Errors, Plaintiff challenges the Commissioner's findings with respect to the effects MS has on her ability to perform substantial gainful activity and she has presented no argument as to her alleged back and mental impairments. (Doc. 7; *see, also* Doc. 10). Accordingly, the Court will focus its review of the record essentially on the evidence related to Plaintiff's MS and its effects on her ability to perform substantial gainful activity.

An April 17, 2002, MRI of Plaintiff's brain revealed mild white matter disease stable from the previous exam possibly demyelinating in origin. (Tr. 172).

Neurologist Dr. Merryman has treated Plaintiff for MS continuously since March, 2002. (Tr. 189-216; 235-43; 276-84). Initially, Dr. Merryman noted that Plaintiff had history of relapsing remitting MS with optic neuritis and recommended that she maintain an active lifestyle with good heath habits. *Id.*

On March 3, 2006, Dr. Merryman reported that Plaintiff had been unable to work due to her multiple sclerosis, that because of her inability to tolerate heat she was unable to perform her previous work as a chef, and that because of her inability to regulate her temperature, she was not able to perform her past work as a crossing guard. *Id.* Dr. Merryman also reported that Plaintiff's greatest MS symptom was fatigue which was a significant limiting factor, that she had to take frequent breaks during the day, and that she had significant vertigo and visual disturbances. *Id.* Dr.

4

Merryman noted that Plaintiff had a longstanding, well-documented history of MS, her symptomatology had been significant auto-immune dysfunction, and that it was anticipated that she would be unable to hold down gainful full-time employment. *Id.*

Dr. Merryman noted on March 1, 2007, that Plaintiff reported she felt as though she continued to get worse, she had only relapses and no remissions, her left hand was getting more numb, and that she had daily vertigo and dizziness. (Tr. 282-83). Dr. Merryman also noted that Plaintiff had an antalgic gait and that the remaining examination was normal. *Id.*

Plaintiff has received treatment from Dr. Fleishman, an ophthalmologist, since July, 2001. (Tr. 173-88; 260-61). On August 17, 2004, Dr. Fleishman reported that when he first examined her, Plaintiff had an afferent pupillary defect on the left, mild optic disk edema on the left, a central visual field defect on the left, and that her tentative diagnosis was acute optic neuritis involving the left optic nerve. *Id.* Dr. Fleishman also reported that on April 29, 2004, Plaintiff's examination was essentially normal and her diagnosis was multiple sclerosis with history of optic neuritis of the left eye. *Id.*

Examining physician Dr. Danopulos reported on September 20, 2004, that Plaintiff ambulated with a cane that she had been using for a month, she had a history of MS and optic neuritis, was very sensitive to bright light, had blurred vision, experiences vertigo, and that in January, 2004, she started experiencing numbness in both legs. (Tr. 111-18). Dr. Danopulos also reported that Plaintiff had decreased strength in her left hand, and that the objective findings were consistent with MS which was being properly treated. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work-related activities was affected and restricted by her MS which had shown progression over time despite proper treatment. *Id.*

5

Plaintiff has also received treatment from Dr. Hartel, a neuro-ophthalmologist since September, 2005. (Tr. 217-34; 258-60). On June 29, 2006, Dr. Hartel reported that Plaintiff had a normal optic nerve appearance and maintained central visual acuities and that she was absolutely stable from an objective neuro-ophthalmologic standpoint. *Id.*

Examining neurologist Dr. Smith reported on March 12, 2007, that Plaintiff was diagnosed with multiple sclerosis in 2001, that she has had an attack every year since then, has never had diplopia or numbness in her face, and that she has had numbness in her left hand, vertigo, and tunnel vision. (Tr. 263-75). Dr. Smith also reported that Plaintiff does not sweat, cannot tolerate heat, goes outside only on cloudy, overcast days with the temperature in the 40s, her walking was unsteady and she used a cane intermittently at home, and that she was working part-time. *Id.* Dr. Smith noted that Plaintiff seemed sincere, had decreased pinprick on the left side of her face in all three divisions of the fifth nerve, had some atrophy of the left optic nerve, her grip in the left hand was weaker than in the right by half, her pinch was decreased on the left but her effort was poor, her left forearm was a centimeter smaller than the right, and that when doing the patellar reflex on the left, she gave an extra jerk. *Id.* Dr. Smith identified Plaintiff's diagnosis as multiple sclerosis, relapsing-remitting type and he opined that Plaintiff had no overwhelming neurologic deficit, and was able to work part-time, and had impairment with respect to walking, lifting, and carrying objects. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to give controlling weight to Dr. Merryman's opinion, by finding that she was not entirely credible, and by relying on the VE's testimony because it was in response to an improper hypothetical question.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only

7

appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Judge Armstead rejected Dr. Merryman's opinion essentially on the basis that it was not supported by her clinical notes and was inconsistent with the other evidence of record. (Tr. 19-23).

Multiple sclerosis is an incurable, progressive disease subject to periods of remission and exacerbation. *Wilcox v. Sullivan,* 917 F.2d 272, 277 (6th Cir. 1990). In evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities. *Id.*

There does not appear to be any dispute that Plaintiff has MS. Indeed, as noted above, Dr. Merryman has been treating her for that disorder since March, 2002, prior to Plaintiff's alleged onset date of June 11, 2004.

A review of Dr. Merryman's office notes reveals that, consistent with MS, Plaintiff has had remissions and exacerbations but that her condition has deteriorated over time. For example, in September, 2002, Dr. Merryman noted that although she had symptoms of heat

8

intolerance, difficulty with her balance, and fatigue, Plaintiff was working as a prep cook, was able to do yoga and water aerobics. In December, 2002, Dr. Merryman noted that Plaintiff had left her job as a prep cook and was working as a crossing guard but that she had not had any significant flare-ups of the MS. However, in April, 2003, Dr. Merryman noted that although she was enjoying her job as a crossing guard, she was having a significant problem with fatigue, her balance was getting worse, and that she was unable to tolerate heat in the sense that she did not sweat. In October, 2003, Dr. Merryman reported that Plaintiff was able to go to Italy for three weeks and planned to go to Belgium for Christmas, that she was still working as a crossing guard, and that she had not had any flare-ups. However, by April, 2004, Dr. Merryman reported that Plaintiff was having increasing difficulties particularly with the sun and heat, significant fatigue, weakness in her legs, vertigo, and tunnel vision. In June, 2004, Dr. Merryman reported that Plaintiff was not doing well, had to quit her job due to the vertigo and weakness especially in her legs, she had significant fatigue, and that she was diligently having to avoid the sun.

    Dr. Merryman's clinical notes continue to document the progression of Plaintiff's disease. For example, in March, 2005, Dr. Merryman reported that Plaintiff had quit her job as a crossing guard, was attempting to work part-time in a furniture store dusting the furniture, continued to have worsening fatigue, leg and arm weakness, vertigo, and tunnel vision. In August, 2006, Dr. Merryman noted that Plaintiff had good days and bad days, more bad than good, had no energy, had vertigo and tunnel vision, her legs get numb at times and feel like they are going to "go out", and that she had heat intolerance. Finally, in March, 2007, Dr. Merryman noted that Plaintiff felt she continued to get worse, that she had vertigo and dizziness daily, had tunnel vision, her left hand was getting numb, she felt she had no good days, her legs went numb more often than before, and that

she continued to have significant fatigue.

Both of the physicians who examined Plaintiff at the Commissioner's request, Dr. Danopulos and Dr. Smith, noted that Plaintiff had complaints and symptoms consistent with her diagnosis of MS. For example, Dr. Danopulos noted Plaintiff's sensitivity to bright light, blurred vision, vertigo, and numbness in her legs. Dr. Danopulos also noted Plaintiff's decreased strength in her left hand and he concluded that while Plaintiff's MS was being treated properly, it continued to progress. Similarly, Dr. Smith noted that Plaintiff could not tolerate heat, did not sweat, had an unsteady gait, had decreased pinprick on the left side of her face, decreased grip in her left hand, and that although she had no "overwhelming" neurologic deficit, she was sincere and had impairments with respect to her abilities to walk, lift, and carry objects. Essentially, neither of the examining physicians contradicted the findings and conclusions of treating physician Dr. Merryman.

The only evidence which arguably contradicts Dr. Marryman's conclusions and opinions is the opinion of the non-treating, non-examining reviewing physician who offered his opinion in December, 2004. Under these facts, the Commissioner erred by rejecting Dr. Merryman's opinion that Plaintiff is disabled. Therefore, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and

the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, long time treating physician Dr. Merryman has opined that Plaintiff is disabled and that opinion is consistent with the findings and conclusions of the examining physicians. The only evidence which arguably contradicts Dr. Marryman's conclusions and opinions is the opinion of the non-treating, non-examining reviewing physician.

It is accordingly recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

April 14, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C),

(D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).